United States District Court
Southern District of Texas

**ENTERED**

January 23, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-20-427 |
| | § | |
| CESAR FLORES | § | |

## MEMORANDUM OPINION AND ORDER

A grand jury charged Cesar Flores ("Defendant") with one count of Engaging in the Firearms Business without a License (18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D)) and nine counts of False Statement During Acquisition of a Firearm (18 U.S.C. § 924(a)(1)(A)).[1] Pending before the court is the Opposed Motion to Dismiss ("Defendant's Motion to Dismiss") (Docket Entry No. 43). Plaintiff asks the court to dismiss the Superseding Indictment, arguing that the charged statutes violate the Second Amendment.[2] For the reasons explained below, neither prohibition violates the Second Amendment. Defendant's Motion to Dismiss will therefore be denied.

## I. Indictment and Procedural Background

Count One of the Superseding Indictment alleges that "[f]rom on or about November 1, 2018 to on or about December 12, 2019, in

---

[1]Superseding Indictment, Docket Entry No. 36. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2]Defendant's Motion to Dismiss, Docket Entry No. 43, p. 1.

the Southern District of Texas, Defendant, CESAR FLORES, not being a licensed dealer of firearms . . . did willfully engage in the business of dealing in firearms" in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D).[3] Counts Two through Ten allege that Defendant "knowingly made [] false statement[s] and representation[s] to . . . Federal Firearms Licensee[s] . . . with respect to information required . . . to be kept in [their] records," in violation of 18 U.S.C. § 924(a)(1)(A).[4]     The § 924(a)(1)(A) counts are based on allegations that Defendant lied about his address on Firearms Transaction Records (Bureau of Alcohol, Tobacco, and Firearms Form 4473).[5]

Defendant filed his Motion to Dismiss on November 18, 2022.[6] Defendant asks the court to recognize a Second Amendment right to commercially sell firearms.[7]  He argues that the charged statutes violate that right and the Second Amendment rights of buyers.[8]  The Government filed the Government's Response in Opposition to Defendant's Motion to Dismiss ("Government's Response") (Docket Entry No. 46) on December 17, 2022.[9]  The Government argues that

---

[3]Superseding Indictment, Docket Entry No. 36, p. 1.

[4]Id. at 2-10.

[5]Id.

[6]Defendant's Motion to Dismiss, Docket Entry No. 43, p. 1.

[7]Id. at 3.

[8]Id. at 6-7.

[9]Government's Response, Docket Entry No. 46, p. 1.

there is no Second Amendment right to commercially deal firearms and that the charged laws are consistent with historical practice.[10] Defendant filed his Reply in Support of Opposed Motion to Dismiss ("Defendant's Reply") (Docket Entry No. 47) on December 27, 2022.[11]

## II.   Legal Standard

### A.   Federal Rule of Criminal Procedure 12(b)(1)

Rule 12(b)(1) allows a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A court may grant a motion to dismiss an indictment if the defect "in the prosecution is essentially one of law." United States v. Guthrie, 720 F. App'x 199, 201 (5th Cir. 2018) (per curiam). A defendant may therefore use a Rule 12(b)(1) motion to challenge the constitutionality of the charged statutes. United States v. Valencia, No. 5:17-CR-882-DAE(1)(2), 2018 WL 6182755, at *2 (W.D. Tex. Nov. 27, 2018).

### B.   The Challenged Statutes

Count One charges that Defendant violated 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D).[12] Section 922(a)(1)(A) makes it unlawful "for any person except a licensed importer,

---

[10]Id. at 11.

[11]Defendant's Reply, Docket Entry No. 47, p. 1.

[12]Superseding Indictment, Docket Entry No. 36, p. 1.

-3-

licensed manufacturer, or licensed dealer, to engage in the
business of importing, manufacturing, or dealing in firearms."
Section 921(a)(11) defines a "dealer" as "(A) any person engaged in
the business of selling firearms at wholesale or retail . . ."[13]
Section 923(a), also cited in Count One, states that "[n]o person
shall engage in the business of importing, manufacturing, or
dealing in firearms . . . until he has filed an application with
and received a license to do so from the Attorney General."
Section 924 provides the penalties for anyone who willfully
violates Title 18 Chapter 44, which includes §§ 922 and 923.

Counts Two through Ten charge that Defendant violated 18
U.S.C. § 924(a)(1)(A). Section 924(a)(1)(A) makes it a crime to
"knowingly make[] any false statement or representation with
respect to the information required by [Chapter 44] to be kept in
the records of a" federally licensed firearms dealer.

## C.    The Second Amendment and <u>Bruen</u>

The Second Amendment states that "[a] well regulated militia
being necessary to the security of a free State, the right of the
people to keep and bear arms shall not be infringed." U.S. Const.
amend. II. In <u>District of Columbia v. Heller</u>, 128 S. Ct. 2783,
2822 (2008), the Court held that the Second Amendment protects the

---

[13]<u>See also</u> Fifth Circuit Pattern Jury Instructions - Criminal
(2019) ("5th Cir. PJI"), Instruction 2.43A, Dealing in Firearms
Without License 18 U.S.C. § 922(a)(1)(A), p. 260 (requiring "[t]hat
the defendant was a person engaged in the business of selling
firearms at wholesale or retail").

right to possess a handgun in the home for self-defense.   In McDonald v. City of Chicago, Illinois, 130 S. Ct. 3020, 3025 (2010), the Court held that the Second Amendment applies to the states through the Fourteenth Amendment.   In New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111, 2122 (2022), the Court held that the Second Amendment also protects possession of a handgun outside the home for self-defense.

Bruen also substantially clarified the standard to apply to regulation of Second Amendment conduct.   A court starts by asking whether the "Second Amendment's plain text covers [the] individual's conduct."   Id. at 2126.   If it does, the conduct is presumptively protected.   Id. at 2129-30.   To justify a regulation of protected conduct, the Government must "demonstrat[e] that it is consistent with the Nation's historical tradition of firearm regulation."   Id. at 2130.   Bruen did not address whether Second Amendment scrutiny applies to any conduct outside the Second Amendment's plain text.

### III.   Analysis

Plaintiff challenges the constitutionality of both 18 U.S.C. § 922(a)(1)(A)—Engaging in the Firearms Business without a License and § 924(a)(1)(A)—False Statement During Acquisition of a Firearm. Defendant argues that the conduct charged in the Superseding Indictment is protected by the Second Amendment.   Defendant argues that the statutory restrictions fail Bruen scrutiny because they

-5-

exceed the nation's history of firearm regulation.   The Government
responds that the Second Amendment does not cover the conduct
alleged and that the restrictions are consistent with historical
practice.

**A.    Count One - 18 U.S.C. § 922(a)(1)(A)**

Defendant argues that the court should apply <u>Bruen</u> scrutiny to
§ 922(a)(1)(A) because it criminalizes conduct protected by the
Second Amendment — the commercial sale of firearms.

<u>Heller</u>, <u>McDonald</u>, and <u>Bruen</u> held that the Second Amendment
protects — from federal and state governments — the right to
possess and carry a handgun in or outside the home for self-
defense. <u>Heller</u>, 128 S. Ct. at 2822; <u>McDonald</u>, 130 S. Ct. at 3026;
<u>Bruen</u>, 142 S. Ct. at 2122.   Defendant argues that the Second
Amendment also protects an individual's right to commercially deal
in firearms.[14]   Despite <u>Bruen</u>'s command, Defendant does not address

---

[14]Defendant offers a somewhat shifting definition of his
claimed right to deal in firearms.   At times he states that he has
a right to "freely purchase and sell" firearms.   Defendant's Motion
to Dismiss, Docket Entry No. 43, p. 5.   At other times he
emphasizes that he is a hobbyist collector, seemingly arguing that
he at least has a right to non-commercially buy and sell firearms
for his collection.   <u>Id.</u> at 7; Defendant's Reply, Docket Entry
No. 47, pp. 1-2 n.1.   Section 921(a)(11) and the Fifth Circuit
Pattern Jury Instructions make clear that 18 U.S.C. § 922(a)(1)(A)
only applies to persons "selling firearms at wholesale or retail."
The Instructions state:

A person is "engaged in the business of selling firearms
at wholesale or retail," if that person devotes time,
attention, and labor to dealing in firearms as a regular
course of trade or business with the principle objective
(continued...)

the Second Amendment's plain text.   Instead he argues (1) that historical sources show the Second Amendment includes the right to commercially deal firearms and (2) that the Second Amendment logically implies such a right.[15]   Defendant argues that the challenged laws also impermissibly burdens *buyers'* rights to keep and bear arms.[16]

### 1.   The Second Amendment's Text

Although neither party discusses it, <u>Bruen</u> requires the court to start with the Second Amendment's plain text.   142 S. Ct. at

---

[14](...continued)
of livelihood and profit through the repetitive purchase and resale of firearms. Such term does not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of that person's personal collection of firearms.

. . .

proof of profit is not required as to a person who engages in the [business] of firearms for criminal purposes or terrorism.

5th Cir. PJI, Instruction 2.43A.  In short, § 922(a)(1)(A) does not criminalize buying and selling guns for a personal collection.  The government can only convict a defendant of this offense by showing that he sold guns at wholesale or retail for profit (or to facilitate crimes).  To prevail on his Constitutional challenge then, Defendant must show that the Second Amendment includes a right to <u>commercially</u> buy and sell firearms.  Defendant is free to argue to the fact finder that he did not violate § 922(a)(1)(A) because he buys and sells as a hobbyist collector.

[15]Defendant's Motion to Dismiss, Docket Entry No. 43, pp. 3-6.

[16]<u>Id.</u> at 6-7 ("These burdens violate the Second Amendment because they create a significant barrier to the free exercise of the right to bear arms. . .").

2129-30.  The Second Amendment protects the right to "keep and bear arms."  U.S. Const. amend. II.  The Heller Court examined numerous historical sources to determine the founding-era meaning of those words.  128 S. Ct. at 2791-97.  It determined that, around the time of the founding, "the most natural reading of 'keep Arms' in the Second Amendment is to 'have weapons.'"  Id. at 2792.  And "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'"  Id. at 2793.  Defendant does not explain how selling guns at wholesale or retail fits within either meaning.

### 2.   Contemporary Historical Sources

Defendant cites founding-era texts to show that the Second Amendment includes a right to commercially sell firearms. Defendant points to 18th Century English bans on importing firearms to the American colonies:

> In 1774, King George III of England banned imports of ammunition and firearms into the American colonies. See 5 Acts Privy Council 401, reprinted in Connecticut Courant, Dec. 19, 1774, at 3.  The Americans interpreted the ban on firearms commerce as evidence of England's intent to enslave American[s].  For example, the South Carolina's General Committee issued a proclamation declaring:  'By the late prohibition of exporting arms and ammunition from England, it too clearly appears a design of disarming the people of America, in order the more speedily to dragoon and enslave them.'  1 John Drayton, Memoirs of the American Revolution 166 (1821).[17]

Defendant offers two references regarding the lack of laws prohibiting the purchase and sale of guns:

---

[17]Id. at 3-4.

-8-

> Thomas Jefferson noted that "[o]ur citizens have always
> been free to make, vend, and export arms.  It is the
> constant occupation and livelihood of some of them."
> Thomas Jefferson, 6 Writings 252-53 (P. Ford ed. 1895).
> As one early Republic commentator remarked:  "What law
> forbids the veriest pauper, if he can raise a sum
> sufficient for the purchase of it, from mounting his Gun
> on his Chimney Piece...?"  _Heller_, 554 U.S. at 583 n.7
> (_quoting_ Some Considerations on the Game Laws 54
> (1796)).[18]

The historical record before the court is limited.  But Defendant offers some evidence of the colonists' concern about government eliminating the supply of arms.  The cited references also suggest that there was not extensive regulation of the 18th Century American firearms industry, aside from English bans.  But Defendant's evidence has several flaws.  First, the fact that colonists were concerned with English suppression of the firearms trade demonstrates just that — a concern.  It does not show that the drafters meant to respond to that concern with a Constitutional right to sell firearms.  Second, the ability of 18th Century Americans to make and sell arms does not imply that the governments could not regulate the industry.  In fact, there were founding-era regulations of gun sales.  _See_ _Teixeira v. County of Alameda_, 873 F.3d 670, 685 (9th Cir. 2017) (_en banc_).  In _Teixeira_ the court reviewed a broader historical record and rejected the same argument made by Defendant.  _Id._ at 686-87.  The court emphasized that although the colonial governments "provided and stored guns" and

---

[18]_Id._ at 5.

"financially supported private firearms manufacturers," they also "controlled the conditions of trade." Id. at 685. For example, some colonies imposed bans on selling arms to native Americans, and others imposed geographical restrictions on the sale of arms. Id. The court concluded that "no historical authority suggests that the Second Amendment protects an individual's right to sell a firearm." Id. at 686-87.

Under Bruen the identification of protected conduct is driven by the Second Amendment's plain text. Defendant's historical evidence is too sparse and too weak to justify recognizing an unwritten right to commercially sell arms.

### 3.   Implied Right to Engage in Firearms Dealing

Defendant also argues that the right to commercially sell firearms is implied by logical necessity. Defendant states that "[i]f the right to bear arms is to have any meaning, it must include the right to freely purchase and sell the firearms citizens are constitutionally entitled to possess."[19]

In response, the Government cites Teixeira, in which prospective gun store owners challenged a county requirement that gun stores be located more than 500 feet from residentially zoned land.   873 F.3d at 674.   The owners argued that the ordinance violated their Second Amendment right to sell firearms. Id. at 681. The court rejected their claim, concluding that "the Second

---

[19]Id.

-10-

Amendment does not independently protect a proprietor's right to sell firearms." Id. at 690. The court considered a separate challenge that the plaintiffs brought on behalf of their possible customers but rejected it because they failed to allege "that the ordinance meaningfully inhibits residents from acquiring firearms within" the county. Id. at 680.

Defendant cites no case that contradicts Teixeira's holding that "the Second Amendment does not independently protect a proprietor's right to sell firearms." Id. at 690.[20]

---

[20]In his Reply, Defendant cites Mance v. Sessions, 896 F.3d 699 (5th Cir. 2018), United States v. Hosford, 843 F.3d 161 (4th Cir 2016), and United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010). However, these opinions do not answer whether there is an independent right to sell firearms, and to some extent they undermine Defendant's argument. In Mance the plaintiffs, a firearms dealer and would-be buyers, challenged laws that prohibited "the direct sale of a handgun by a federally licensed firearm dealer (FFL) to a person who is not a resident of the state in which the FFL is located." 896 F.3d at 701. The court applied Second Amendment scrutiny but held that the statutes were constitutional because "[t]he [buyers] are not prohibited by the federal laws from purchasing and possessing handguns," and the restrictions were narrowly tailored. Id. at 711. The court emphasized that "[t]he challenged federal gun laws allow ample access to handguns by those who are permitted to possess and purchase them under state and local laws." Id. at 709. The Hosford court declined to answer whether Heller's list of "'presumptively lawful'" gun laws included "all 'laws imposing conditions and qualifications on the commercial sale of arms,' or only 'longstanding'" ones. 843 F.3d at 166. But the court emphasized that even assuming without deciding that the defendant's charged conduct was covered at all by the Second Amendment, it was not "'core' Second Amendment conduct." See id. at 169. The court in Marzzarella stated as a brief aside that commercial firearm restrictions are not exempt from Second Amendment scrutiny. 614 F.3d at 92 n.8. But that dicta did not clarify whether that scrutiny derived merely from citizens' right to possess firearms or a separate right to commercially sell firearms.

(continued...)

Although the Supreme Court has not ruled on regulations of commercial gun sellers, a line of dicta stated in <u>Heller</u>, <u>McDonald,</u> and <u>Bruen</u> casts doubt on Defendant's argument.   The <u>Heller</u> Court stated:

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or <u>laws imposing conditions and qualifications on the commercial sale of arms</u>.

128 S. Ct. at 2816–17 (emphasis added); <u>see also</u> <u>McDonald</u>, 130 S. Ct. at 3047; <u>Bruen</u>, 142 S. Ct. at 2162 (Kavanaugh, J. and the Chief Justice, concurring).   The Court described these categories as "presumptively lawful."   <u>Heller</u>, 128 S. Ct. at 2817 n.26. Likewise, the <u>McDonald</u> Court stated that:

> We made it clear in <u>Heller</u> that our holding did not cast doubt on <u>such longstanding regulatory measures as</u> "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or <u>laws imposing conditions and qualifications on the commercial sale of arms</u>.

<u>McDonald</u>, 130 S. Ct. at 3047 (emphasis added).

Defendant argues that the Second Amendment implies by logical necessity a right to commercially deal in firearms.   This argument

---

[20](...continued)
Defendant cites an 1871 Tennessee Supreme Court opinion that acknowledges an independent right to purchase firearms.   <u>See</u> <u>Andrews v. State</u>, 50 Tenn. 165, 178 (Tenn. 1871).   But the law at issue in the case was a complete ban on possessing pistols and revolvers, not a regulation of gun sales.   <u>Id.</u> at 171.

is unsupported and contrary to the holding of <u>Teixeira</u> and the dicta in <u>Heller</u>, <u>McDonald</u>, and <u>Bruen</u>.

### 4.    Burden on Buyers' Second Amendment Rights

Defendant appears to argue that even if there is no constitutional right to commercially deal firearms, the challenged laws impermissibly burden *buyers*' Second Amendment rights.[21]   He argues that the charged statutes "violate the Second Amendment because they create a significant barrier to the free exercise of the right to bear arms and are inconsistent with the Nation's historical tradition of firearm regulation."[22]

Defendant's argument raises the question of what standard applies to this type of challenge after <u>Bruen</u>.   <u>Bruen</u> characterized Second Amendment scrutiny by stating:

> [T]he standard for applying the Second Amendment is as follows:   When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.   The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

142 S. Ct. at 2129-30.   The court has concluded that commercial firearm dealing is not covered by the Second Amendment's plain text.     Possessing a firearm is protected conduct, but § 922(a)(1)(A) does not regulate possession of firearms.   <u>Bruen</u>

---

[21]Defendant's Motion to Dismiss, Docket Entry No. 43, pp. 5-6.

[22]<u>Id.</u> at 6-7.

does not address what Second Amendment scrutiny, if any, applies to
laws indirectly burdening the right to keep and bear arms.
Defendant's argument could be read as contending that a law that
does not regulate protected conduct might still trigger <u>Bruen</u>
scrutiny if it posed a "significant barrier" to the exercise of
Second Amendment rights.[23]   But Defendant fails to satisfy such a
standard because he offers no evidence that § 922(a)(2)
meaningfully increases gun prices or impedes any citizen's access.
Given his lack of evidence, Defendant's Motion to Dismiss fails
even if he could trigger <u>Bruen</u> scrutiny by showing more than a
<u>de minimis</u> burden on downstream possession rights.   If <u>Bruen</u>
instead leaves means-end scrutiny intact for laws that do not
regulate protected conduct, Defendant's Motion to Dismiss fails for
the same reason.   Without any information about the law's burden on
gun possession, the court cannot determine whether the law is
narrowly or reasonably tailored to the Government's interest.
Because Defendant's Motion to Dismiss fails under any plausible
burden standard, the court need not definitively resolve what level
of scrutiny applies to challenges to the regulation of commercial
firearm sales.[24]

---

[23]<u>Id.</u>

[24]Complying with § 922(a)(1)(A) presumably adds some cost to
the firearm industry and therefore downstream gun possession.   But
because he lacks evidence of the burden on gun possession rights,
Defendant could only prevail under a sweeping expansion of <u>Bruen</u>
scrutiny.   That is, <u>Bruen</u>'s historical analogue test would have to
(continued...)

-14-

For the reasons explained above, Defendant's Motion to dismiss will be denied as to Count One.

## B.    Counts Two Through Ten - 18 U.S.C. § 924(a)(1)(D)

Defendant briefly argues that § 924(a)(1)(D) violates the Second Amendment "by requiring the truthful disclosure of certain information in order to lawfully complete a firearm purchase."[25] Defendant also argues that these counts fail because if § 922(a)(1)(A) is unconstitutional, Defendant's "purported false statement[s] during the purchase of the firearm[s] are no longer material."[26]

Defendant fails to explain how § 924(a)(1)(D) imposes any restraints on gun purchases.   To state the obvious, anyone can

---

[24] (...continued)
apply to any law that indirectly imposed any downstream cost on gun possession, no matter how small.  For several reasons, the court is convinced that is not the law.

Such a reading is undermined by the statement reiterated in Heller, McDonald, and Bruen that "laws imposing conditions or qualifications on the commercial sale of arms" are "presumptively lawful."  When a law triggers Bruen scrutiny, the government has the burden of demonstrating its lawfulness.  In other words, that law is presumptively unlawful.  It would be inconsistent to call commercial firearms regulations "presumptively lawful" if they trigger Bruen scrutiny.

Such a reading would also lead to absurd results.  It could bring Second Amendment scrutiny to remote regulations having little to do with gun possession.  Even regulations of steel manufacturing could be subjected to Bruen scrutiny because they might cause some trivial downstream increase in gun prices.

[25]Defendant's Motion to Dismiss, Docket Entry No. 43, p. 9-10.

[26]Id. at 10.

choose to tell the truth.  Defendant argues that the law acts as an enforcement mechanism for other firearm restrictions.[27]  But since it imposes no limitations or costs of its own on firearm purchases or possession, it does not violate the Second Amendment.

Given the court's conclusion that § 922(a)(1)(A) is constitutional, Defendant's argument that the alleged false statements are somehow rendered immaterial also fails.  Defendant's Motion to Dismiss will therefore be denied as to Counts Two through Ten.

### IV.  Conclusion and Order

For the reasons explained above, the court concludes that 18 U.S.C. §§ 922(a)(1)(A), 923(a), 924(a)(1)(D), and 924(a)(1)(A) do not violate the Second Amendment.  Defendant's Opposed Motion to Dismiss (Docket Entry No. 43) is therefore **DENIED.**

**SIGNED** at Houston, Texas, on this 23rd day of January, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[27]Id.

-16-